BEVERLY BANK, Plaintiff-Appellant, *v.* OAK BROOK BANK, Defendant-Appellee.

First District (4th Division)    No. 81-476

Opinion filed December 31, 1981.

Joseph A. Coakley, of Chicago, for appellant.

Reuben & Proctor, of Chicago (Don H. Reuben, James A. Klenk, and Andrew D. Eichner, of counsel), for appellee.

JUSTICE JIGANTI delivered the opinion of the court:

The plaintiff, Beverly Bank, and the defendant, Oak Brook Bank, are Illinois banking corporations. Beverly Bank filed an action against Oak Brook Bank for damages resulting from a breach of contract, or in the alternative, for money had and received. A bench trial was held, and at the close of Beverly Bank's case, the court entered judgment in favor of Oak Brook Bank. It found that under the contract Beverly Bank had an option which it failed to timely exercise. Beverly Bank on appeal contends that this finding was against the manifest weight of the evidence.

Oak Brook Bank made a loan in the amount of $600,000 to its customer, Phillip Grandinetti. Beverly Bank purchased a $50,000 interest in that loan and entered into a "loan participation agreement" with Oak Brook Bank. Robert Boucek, a vice-president of Beverly Bank, described a loan participation agreement as an agreement between two banks where one bank buys a portion of a loan made by another bank. In this type of situation, the bank making the loan, in this case the Oak Brook Bank, is referred to as the lead bank. The bank which purchases an interest in the loan is referred to as the participating bank. There is only one note and that extends between the borrower and the lead bank. Boucek then indicated that in the instant case the borrower on the loan as carried on Beverly Bank's records was Grandinetti, not Oak Brook Bank.

The loan to Grandinetti and the loan participation agreement were

both dated April 8, 1974. The loan participation agreement specifically provided that Oak Brook Bank made no representations and assumed no responsibility with respect to the collectability of the note.

Also on April 8, 1974, there was a conversation between representatives of Beverly Bank and Oak Brook Bank. No testimony as to the content of this conversation was introduced at trial. The following day a memorandum dated April 9, 1974, was sent from J. Robert Effinger of Oak Brook Bank to John H. Horrigan of Beverly Bank. It reads as follows:

"Thank you for your prompt, affirmative action on Phil Grandinetti and the $50,000 we asked you to carry for six (6) months. Mr. Grandinetti has signed a new note including the $50,000 which you have purchased with the $550,000 currently owing and the maturity of the loan is beyond the six (6) month carry we requested.

The borrower expects to repay $50,000 within six (6) months but if he does not, you have the option to either continue with the loan or have us repurchase the $50,000 at the six (6) month date. The rate will be 1½% above prime, and, again, we appreciate your cooperation."

The six-month date mentioned in the memorandum was October 8, 1974, and there is no indication that Beverly Bank contacted Oak Brook Bank on that date. However, the evidence shows that some time prior to October 23, 1974, an Oak Brook Bank vice-president, Charles E. Morris, had a conversation with a vice-president of Beverly Bank, H. E. Moon. Moon was advised that Grandinetti was not in a position to make the $50,000 payment to Oak Brook Bank and that if Oak Brook Bank repurchased the loan it would be placed in an overline position. In banking terms, that means that Oak Brook Bank would be lending Grandinetti more than 15% of its total capital and surplus. This is prohibited by State banking regulations.

On October 23, 1974, Beverly Bank notified Oak Brook Bank that pursuant to the April 9, 1974, memorandum, Beverly Bank was giving notice to Oak Brook Bank to repurchase the loan. On November 5, 1974, Oak Brook Bank sent a memorandum stating that the repurchase would place Oak Brook Bank in an overline position and that it would appreciate Beverly's continued participation. This action was filed on January 12, 1977.

In entering judgment for Oak Brook Bank on its motion at the conclusion of Beverly Bank's case, the trial court stated that in its judgment, the repurchase agreement was an option contract which was not timely exercised by Beverly Bank.

Beverly Bank's basic argument is that the trial court erred in finding that the contract, as evidenced by the April 9, 1974, memorandum between the parties, contained an option which Beverly Bank failed to

exercise in a timely manner. It also appears that Beverly Bank is contending that the contract to be interpreted was an oral agreement between the representatives of the respective banks on April 8, 1974, and not the memorandum of April 9, 1974, which we recited in its entirety.

■■ The standard of review to be applied in this type of situation was recently stated by the Illinois Supreme Court in *Kokinis v. Kotrich* (1980), 81 Ill. 2d 151, 407 N.E.2d 43. The *Kokinis* court stated that in a bench trial, the defendant may at the close of the plaintiff's case move for judgment in its favor. In ruling on the motion, "[t]he court must consider all of the evidence, including any favorable to the defendant, and is to pass on the credibility of witnesses, draw reasonable inferences from the testimony, and generally consider the weight and the quality of the evidence." (81 Ill. 2d 151, 154, 407 N.E.2d 43, 44.) The decision of the trial court should not be reversed on appeal unless it is contrary to the manifest weight of the evidence.

■■■ If the contract to be interpreted is in fact the memorandum dated April 9, 1974, the contract clearly states that Beverly Bank has "the option" to continue with the loan or have Oak Brook repurchase the loan "at the six month date," that is, on October 8, 1974. There is no showing by Beverly Bank that it attempted to exercise its option to have Oak Brook Bank repurchase the loan "at the six month date." The only evidence is that at an unspecified date prior to October 23, 1974, Oak Brook Bank notified Beverly Bank that Grandinetti could not make the payment and that Oak Brook Bank would be in an overline position if it repurchased the loan. Illinois law clearly holds that "where one party gives an option to another, the acceptance, to be valid so as to conclude an agreement or contract between the parties, must, in every respect, meet and correspond with the offer * * *." (*Morris v. Goldthorp* (1945), 390 Ill. 186, 195, 60 N.E.2d 857, 861.) The court's findings of fact that the contract, which specifically stated that Beverly Bank had an option, constituted an option contract and that the option had not been exercised at the six-month date were supported by the evidence and will not be reversed.

Beverly Bank's other argument implies that the contract to be interpreted was an oral agreement between representatives of Beverly Bank and Oak Brook Bank which occurred on April 8, 1974, a day before the date of the written memorandum. It must be remembered that neither of the parties to that conversation testified at trial. Under this contention, the memorandum of April 9, 1974, was an attempt to modify the oral agreement of the day before. The essence of this argument is that the parties agreed on April 8, 1974, that Beverly Bank was to loan Oak Brook Bank the money for six months. Beverly Bank points to the memorandum which states in its first paragraph that Beverly Bank was asked to "carry" the Grandinetti loan for six months. The term "carry," according to

Beverly Bank, does not imply ownership but only a holding of an interest for a limited period of time. Beverly Bank contends that the memorandum varies the oral agreement because the first paragraph states that the Grandinetti loan is longer than the "six month carry we requested." Beverly Bank argues that from this language the reasonable inference is that in the oral agreement Oak Brook Bank had asked for and received $50,000 for six months and that it was to be promptly repaid to Beverly Bank at the end of the six-month period. In fact, the loan was made to Grandinetti on April 8, 1974, and Beverly Bank signed the loan participation agreement on that day. Beverly Bank claims that it was only after the money was loaned that this memorandum came into effect and extensively changed the terms of the oral agreement. In Beverly Bank's view the language in the second paragraph concerning the option becomes more understandable because that paragraph assures Beverly Bank that it will not be injured by the longer maturity in that Oak Brook Bank was going to repurchase the $50,000 loan whether or not Grandinetti paid it.

There are two responses to Beverly Bank's contention. First, the trial court was well within its discretion in deciding that the contract to be interpreted was in fact the memorandum dated April 9, 1974, and, as we indicated above, there was abundant evidence for the court to interpret the contract as an option contract which was not properly exercised by Beverly Bank. Second, the facts in this case belie the contention of Beverly Bank. Loan participation agreements do not contemplate a situation whereby the lead bank guarantees another bank's loan. Robert Boucek stated at trial that the borrower on the loan, as shown on Beverly Bank's records, was Phillip Grandinetti. The loan participation agreement between Beverly Bank and Oak Brook Bank specifically provided that Oak Brook Bank did not guarantee payment.

For the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

ROMITI, P. J., and LINN, J., concur.